UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
BROOKLYN DIVISION

------------------------------------------------------------------X   Chapter 11

IN RE:

CASE NO.: 1:19-41320-NHL

MITCHELL LANE NY, LLC

Judge: Hon. Nancy Hershey Lord

Debtors.

------------------------------------------------------------------X

MITCHELL LANE NY, LLC

Plaintiff,

-against-

HSBC BANK USA, NATIONAL ASSOCIATION
AS TRUSTEE FOR PHH 2007-1,

Defendant.

------------------------------------------------------------------X

## COMPLAINT

The Plaintiff Mitchell Lane NY, LLC ("Mitchell Lane") complains of the Defendant HSBC Bank USA, National Association As Trustee For PHH 2007-1 ("HSBC") as follows:

### JURISDICTION AND VENUE

1. This action is brought pursuant to sections 105(a), 502, 506 of title 11, United States Code (the "Bankruptcy Code") and under Rules 3007, 3012, 7001(2) and (9) and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

2. This Court has jurisdiction over this action under 28 U.S.C. sections 157 and 1334 and the standing order of the United States District Court for the Eastern District of New York, referring all bankruptcy cases filed herein and all matters arising in and under said cases and related

1

thereto the Bankruptcy Judges of this District, as the action arises in and under and/or relates to the instant Chapter 7 bankruptcy case of the Debtor.

3. This action is a proceeding arising under the Bankruptcy Code and arises in and is related to a case under the Bankruptcy Code as contemplated under 28 U.S.C. section 157(b)(1).

4. This action is a core proceeding pursuant to 28 U.S.C. section 157(b)(2)(A), (B), (K) and (O).

## GENERAL ALLEGATIONS

5. On or about June 1, 2007, Glenn Bernardez ("Bernardez") executed a mortgage (the "Mitchell Lane Mortgage") in favor of Mortgage Electronic Registration Systems, Inc. As Nominee For Aegis Wholesale Corporation (the "Lender") that encumbered the property located at 35 Mitchell Lane, Staten Island, NY 10302 (the "Property"). A copy of the Mitchell Lane Mortgage is annexed hereto as **Exhibit A**. On June 29, 2007, the Mitchell Lane Mortgage was recorded in The Office of The Richmond County Clerk as Document No.: 204908. *See,* **Exhibit A**.

6. The Mitchell Lane Mortgage secured a promissory note (the "Mitchell Lane Note") in the original principal amount of sixty five thousand dollars and zero cents ($65,000.00), executed by Bernardez on June 29, 2007, and delivered to the Lender.

7. By the Referee's Deed dated January 22, 2018 (the " Referee's Deed"), the Referee appointed in the foreclosure filed under Case Number 16-CV-2224 in the United States District Court, Eastern District of New York deeded the Property to Mitchell Lane. A copy of the Referee's Deed is annexed hereto as **Exhibit B**.

8. Bernardez also allegedly executed two other mortgages against the Property. The first mortgage dated June 27, 2005 was in favor of Mortgage Electronic Registration Systems, Inc.

As Nominee For PHH Mortgage Corporation ("PHH") in the amount of $390,450.00 (the "First PHH Mortgage"). A copy of the First PHH Mortgage is annexed hereto as **Exhibit C**.

9. The second mortgage in the amount of $13,550.00 was dated December 6, 2006 and was in also in favor of Mortgage Electronic Registration Systems, Inc. As Nominee For PHH Mortgage Corporation (the "Second PHH Mortgage"). A copy of the Second PHH Mortgage is annexed hereto as **Exhibit D**. The First PHH Mortgage and the Second PHH Mortgage were allegedly consolidated into one lien in the amount of $404,000.00 by the Consolidation, Extension and Modification Agreement dated December 5, 2006 (the "CEMA"). A copy of the CEMA is annexed hereto as **Exhibit E**.

10. The CEMA was then allegedly transferred from PHH Mortgage to Bishops Gate Residential Mortgage Trust and then to HSBC.

11. By a loan modification agreement dated February 21, 2012 (the "Loan Modification"), HSBC agreed to modify the CEMA increasing the mortgage amount and adding "New Money" to the CEMA. A copy of the Loan Modification Agreement is annexed hereto as **Exhibit F**. The Loan Modification increased the amount secured by the CEMA by $100,203.99 from $404,000.00 to $504,203.99. *See, id*. HSBC did not obtain a subordination agreement or written approval from the holder of the Mitchell Lane Mortgage for the "New Money" added to the balance of the CEMA for the Loan Modification.

12. On March 6, 2019, Mitchell Lane commenced a bankruptcy case (the "Instant Case") by filing a voluntary petition for relief pursuant to Chapter 3, Title 11 of the United States Code with the United States Bankruptcy Court for the Eastern District of New York (the "Court").

13. On May 15, 2019, HSBC Bank USA filed a proof of claim (the "Proof of Claim") alleging that it possessed a claim secured by the Property in the amount of $707,656.05. A copy of the Proof of Claim is annexed hereto as **Exhibit G**.

14. The Proof of Claim admits that the note associated with the First PHH Mortgage has been lost. *See id.*

15. Additionally, the Proof of Claim alleges that HSBC is entitled to collect $75,105.94 of alleged payments regarding "Escrow Deficiency for Funds Advanced." *See, id.* However, HSBC provides absolutely not evidentiary support to establish any of these alleged "Escrow Advances" were in fact advanced by HSBC. *See*, *id*.

16. As such, Mitchell Lane seeks a declaratory judgment that HSBC has not established its ownership over the CEMA and that HSBC fails to establish entitlement to $75,105.94 of alleged payments regarding "Escrow Deficiency for Funds Advanced."

## CAUSES OF ACTION

**HSBC HAS FAILED TO ESTABLISH ITS STATUS AS OWNER AND HOLDER OF THE CEMA AND ITS PROOF OF CLAIM SHOULD THEREFORE BE DEEMED INVALID**

17. Mitchell Lane repeats, reiterates and re-alleges each and every allegation set forth in Paragraphs "1" through "16" of the Complaint with the same force and effect as if more specifically set forth herein.

18. Federal Rule of Bankruptcy Procedure ("FRBP") R. 7001(2) states that the commencement of an adversary proceeding is proper in order to determine the "validity, priority, or extent of a lien or other interest in a property." *See,* FRBP R. 7001(2).

19. Under New York law, once a promissory note is tendered to an assignee, the mortgage passes as incident to that promissory note. *See, In re Escobar,* 457 BR 229, 240 (Bankr.

E.D.N.Y. 2011). A written assignment of mortgage does not provide a right to enforce a debt. *See, id.* Furthermore, a transfer of a mortgage without the debt is a nullity, and no interest is acquired. *See, Merritt v. Bartholick,* 36 N.Y. 44, 45 (1867). Finally, a party claiming ownership of a note must prove that ownership by providing the Court with proof of a written assignment of the Note, or by demonstrating that U.S. Bank has physical possession of the Note endorsed over to it." *In Re Agard,* 444 B.R. 231 (Bankr. E.D.N.Y. 2011).

20. A party claiming ownership of a lost promissory note must comply with the standards set forth by the legislature of the state in which the property securing the corresponding mortgage is located. New York Uniform Commercial Code ("NYUCC") and the common law. *See, In Re Residential Capital, LLC,* 2014 WL 3397779, *1 (Bankr. S.D.N.Y. 2014).

21. Pursuant to NYUCC § 3-804:

> The owner of an instrument which is lost, whether by destruction, theft or otherwise, may maintain an action in his own name and recover from any party liable thereon upon due proof of his ownership, the facts which prevent his production of the instrument and its terms. The court shall require security, in an amount fixed by the court not less than twice the amount allegedly unpaid on the instrument, indemnifying the defendant, his heirs, personal representatives, successors and assigns against loss, including costs and expenses, by reason of further claims on the instrument, but this provision does not apply where an action is prosecuted or defended by the state or by a public officer in its behalf.

22. The Courts have also ruled that the lost note affidavit must state when the search was made or by whom, and to indicate approximately when the note was lost. *US Bank Nat. Ass'n v. Richards*, 155 A.D.3d 522, 524, 65 N.Y.S.3d 178, 181 (1st Dept. 2017); *US Bank Nat. Ass'n v. Madero* 80 A.D.3d 751, 915 N.Y.S.2d 612 (1st Dept. 2011).

23. Here, Bernardez allegedly executed the first First PHH Mortgage secured by the Property dated June 27, 2005 in the amount of $390,450.00, *see,* **Exhibit C**, and the Second PHH Mortgage secured by the Property dated December 6, 2006 in the amount of $13,550.00. *See,*

**Exhibit D**.

24. The First PHH Mortgage and the Second PHH Mortgage were allegedly consolidated by the CEMA into one lien in the amount of $404,000.00. *See,* **Exhibit E**.

25. Based upon the Proof of Claim filed on May 15, 2019, HSBC admits that the note associated with the First PHH Mortgage that secured $390,450.00 at origination, has been lost. *See,* **Exhibit G**. The Lost Note Affidavit submitted with HSBC's Proof of Claim makes no mention of when the alleged search for the lost note was made or by whom, nor does it indicate approximately when the note was lost. *See,* **Exhibit G**; *see also, US Bank Nat. Assn v. Richards*, 155 A.D.3d 522, 524, 65 N.Y.S.3d 178, 181 (1st Dept. 2017); *US Bank Nat. Assn v. Madero* 80 A.D.3d 751, 915 N.Y.S.2d 612 (1st Dept. 2011).

26. Accordingly, HSBC's Proof of Claim should be declared invalid because it has failed to establish ownership of the underlying notes and therefore cannot establish the validity of its interest in the Property.

### HSBC FAILS TO ESTABLISH ENTITLEMENT TO $75,105.94 OF ALLEGED PAYMENTS REGARDING ESCROW

27. Mitchell Lane repeats, reiterates and re-alleges each and every allegation set forth in Paragraphs "1" through "26" of the Complaint with the same force and effect as if more specifically set forth herein.

28. A mortgagee is not entitled to claimed expenses that are not incurred or are not adequately explained or supported. *See, In Re Wells,* 463 B.R. 320 (Bankr. E.D. Pa 2011); *see also*, *In Re 29 Brooklyn Avenue, LLC,* 535 B.R. 36 (Bankr. E.D.N.Y. 2015); *In Re Hight,* 393 B.R. 484 (Bankr. S.D. Tex 2008)

29. Here, HSBC filed the Proof of Claim alleging that it possessed a claim secured by the Property in the amount of $707,656.05. *See,* **Exhibit G**.

30. The Proof of Claim alleges that HSBC is entitled to collect $75,105.94 of alleged payments for the "Escrow Deficiency for Funds Advanced." *See, id.* However, HSBC provides absolutely no evidentiary support to establish any of these alleged "Escrow Advances" were in fact advanced by HSBC. *See*, *id*. The only documentation in support of the Escrow Deficiency for Funds Advanced is the Escrow Statement. *See, id.*

31. Thus, HSBC has failed to establish entitlement to $75,105.94 of alleged payments for the "Escrow Deficiency for Funds Advanced" because HSBC has failed to provide any evidence that such payments were actually tendered. *See, In Re Wells,* 463 B.R. 320 (Bankr. E.D. Pa 2011); *see also*, *In Re 29 Brooklyn Avenue, LLC,* 535 B.R. 36 (Bankr. E.D.N.Y. 2015); *In Re Hight,* 393 B.R. 484 (Bankr. S.D. Tex 2008).

32. Therefore, HSBC should not be permitted to collect the $75,105.94 of alleged payments for the "Escrow Deficiency for Funds Advanced" alleged in its Proof of Claim.

**WHEREFORE**, Mitchell Lane respectfully requests that this Honorable Court grant judgment in its favor and against the Defendant as follows:

1. On the First Cause of Action, deeming the Proof of Claim invalid;
2. On the Second Cause of Action, disallowing the portion of the Proof of Claim asserting claim to $75,105.94 of alleged payments for the "Escrow Deficiency for Funds Advanced";
3. That Plaintiff be awarded Attorneys' Fees, Costs and Disbursements for this Action; and
4. Such other relief as the Court deems just, equitable and proper.

Dated: New York, New York
       June 28, 2019

                                              */s/ Seth D. Weinberg*
                                              Seth D. Weinberg, Esq.
                                              *Counsel for Plaintiff*