Hearing Date:   September 26, 2019
Hearing Time:   11:30 am

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
In re:

MITCHELL LANE NY LLC,                              Case No.  19-41320 (NHL)

                                                   Chapter 11

                        Debtor.
----------------------------------------------------------------x

## NOTICE OF PHH MORTGAGE'S MOTION FOR (I) EITHER (A) DISMISSAL OF THE CASE PURSUANT TO 11 U.S.C. §1112 OR (B) RELIEF FROM THE AUTOMATIC STAY PURUSUANT TO 11 U.S.C. §362(d) OR (II) IN THE SECOND ALTERNTIVE, CONVERSION TO CHAPTER 7 UNDER 11 U.S.C. §1112  OR (III) IN THE THIRD ALTERNATIVE, ADEQUATE PROTECTION

**PLEASE TAKE NOTICE,** that the hearing of HSBC Bank USA, National Association as Trustee for PHH 2007-1 by its servicer PHH MORTGAGE (the "Secured Creditor") motion for an order, (i) dismissing the chapter 11 case of the above-captioned debtor (the "Debtor") pursuant to 11 U.S.C. §1112, or (ii) for relief from the automatic stay, pursuant to 11 U.S.C. § 362(d)(1) and (d)(2) to allow Secured Creditor to foreclose on the property located at 35 Mitchell Lane, Staten Island, New York 10302 (the "Property"), or (iii) in the second alternative, if the above request is not granted, conversion to Chapter 7  pursuant to 11 U.S.C. §1112, or (iv) in the third alternative,  for adequate protection.

**PLEASE TAKE FURTHER NOTICE** that the Lift Stay Motion is returnable on **September 26, 2019 at 11:30 a.m**. of that day, or as soon thereafter as counsel can be heard,

before the Hon. Nancy Hershey Lord at 271-C Cadman Plaza East, Courtroom 3529, Brooklyn, NY 11201**.**

      **PURSUANT TO BANKRUPTCY RULE 9014 AND LOCAL BANKRUPTCY RULE 9006-1(b), IF YOU INTEND TO OPPOSE THE MOTION, YOU MUST SERVE ON SECURED CREDITOR'S COUNSEL AND FILE WITH THE CLERK OF THE BANKRUPTCY COURT, WRITTEN OPPOSITION TO THE MOTION SO AS TO ENSURE ACTUAL RECEIPT NOT LATER THAN SEVEN (7) DAYS BEFORE THE RETURN DATE.**

Dated: August 23, 2019
       Westbury, NY

                  RAS BORISKIN, LLC
                  900 Merchants Concourse
                  Westbury, Y 11590

                  By: /s/ Cleo Sharaf-Green
                  Cleo Sharaf-Green, Esq.
                  Tel: (516) 280-7675 ext. 1194
                  Fax: (516) 280-7674
                  Email: csharaf@rasboriskin.com

TO:

Att:  Seth D. Weinberg, Esq.
Hasbani & Light, P.C.
450 Seventh Avenue, Ste 1408
New York, NY 10123

Mitchell Lane NY LLC (DE)
1688 Meridian Avenue, Suite 610
Miami Beach, FL 33139

Office of the United States Trustee
Eastern District of NY (Brooklyn Office)
U.S. Federal Office Building
201 Varick Street, Suite 1006
New York, NY 10014

NYC Water Board
Andrew Rettig
Assistant Counsel
59-17 Junction Blvd, 13th Floor
Elmhurst, NY 11373-5108

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
In re:

**MITCHELL LANE NY LLC,**                          Case No.  19-41320 (NHL)

                                                   Chapter 11

                      Debtor.
------------------------------------------------------------------x

## PHH MORTGAGE'S MOTION FOR (I) EITHER
## (A) DISMISSAL OF THE CASE PURSUANT TO 11 U.S.C. §1112
## OR (B) RELIEF FROM THE AUTOMATIC STAY
## PURUSUANT TO 11 U.S.C. §362(d) OR
## (II) IN THE SECOND ALTERNTIVE, CONVERSION TO CHAPTER 7 UNDER 11
## U.S.C. §1112  OR (III) IN THE THIRD ALTERNATIVE, ADEQUATE PROTECTION

Secured creditor HSBC Bank USA, National Association as Trustee for PHH 2007-1 by its servicer PHH MORTGAGE (the "Secured Creditor"), by and through the undersigned counsel, files this motion (the "Motion") for an order (i) dismissing the chapter 11 case of the above-captioned debtor (the "Debtor"), or (ii) for relief from the automatic stay to allow Secured Creditor to foreclose on the property located at 35 Mitchell Lane, Staten Island, New York 10302 (the "Property"), or (iii) in the second alternative, if the above request is not granted, conversion to Chapter 7  pursuant to 11 U.S.C. §1112, or (iv) in the third alternative,  for adequate protection. In support of the Motion, Secured Creditor states as follows:

### PRELIMINARY STATEMENT

1.      To be entitled to relief under Chapter 11, a debtor must have a reasonable prospect of a successful reorganization and the case must be filed in good faith.  Debtor cannot satisfy either standard and this case should be dismissed.

2.      The Property is a two-unit investment property and is the single asset of the Debtor. Secured Creditor is the only creditor[1] in this Chapter 11 case which case has no reasonable prospects for a successful reorganization.  Debtor purchased the Property at the junior lienholder's foreclosure sale subject to Secured Creditor's first mortgage lien.  Debtor has not taken control over the Property since it acquired the Property on January 22, 2018.  Debtor has essentially filed the instant Chapter 11 to void Secured Creditor's first foreclosure judgment as demonstrated by Debtor's motion to value and Debtor's adversary proceeding.

3.      Secured Creditor holds the first mortgage on the Debtor's single asset as security for the payment of debt on which non-debtor borrower Glenn Bernandez (the "Borrower") is in default. Borrower' debt to Secured Creditor has been reduced to a foreclosure judgment (i.e. $642,035.22) which substantially exceeds the purported value listed on Debtor's schedules (i.e. $230,000.00) See Debtor's Schedule D [Bankr. Dkt No. 17].

4.      The Debtor's schedules show it has no unencumbered assets, no source of income and thus no reasonable likelihood that the Debtor can undergo a successful reorganization.  [Bankr. Dkt No. 17]

5.      The Second Circuit's decision in *In re Boston Post Road Limited Ptsp.*, 21 F.3d 477 (2d Cir. 1994) has made clear that in such a situation, the Debtor has no ability to formulate a plan without the consent of the Secured Creditor, which consent does not exist.  Accordingly, this case easily satisfies the standard for finding "cause" to dismiss under the judicially-created "bad faith" doctrine, which despite the "bad faith" label, is in practice primarily an objective analysis of the Debtor's prospects for successfully confirming and consummating a plan.  There is no reasonable

---

[1] Although Secured Creditor is the only creditor listed on Debtor's schedules, NYC Water Board has also filed a "secured" proof of claim in the amount of $3,195.48, dated July 19, 2019.

prospect of reorganization and the case was filed for the express purpose of reducing the Secured Creditor's foreclosure judgment and to frustrate Secured Creditor's attempt to schedule a foreclose sale of the Property.

6.      In addition, this case, satisfies at least two of the enumerated statutory bases for finding "cause" for dismissal – (a) absence of prospect of rehabilitation coupled with diminution of value of estate assets, and (2) gross mismanagement.

7.       Secured Creditor's collateral has been allowed to waste by Debtor.

8.      According to the junior mortgagee's foreclosure judgment, there were no tenants/squatters residing at the Property at the time the foreclosure judgment was entered; namely September 6, 2017.  Debtor, however, now alleges that there is a "squatter" in one unit and that the non-debtor Borrower is residing in the basement.  Based on same, it appears that Debtor failed to secure the Property and take appropriate measures after the foreclosure sale of December 7, 2017, to prevent the entry of squatters or other parties onto the Property.

9.      Debtor has filed a motion to value the Property even though an interior appraisal of the Property is, according to Debtor, not possible due to squatters on the Property.

10.      According to Debtor's Operating Statements, Debtor is not collecting rent.  To date, all of Debtor's Monthly Operating Reports set forth that "Copies of IRS Form 6123 and Tax returns are not included because Debtor has no income to report".   See Monthly Operating Reports, [Bankr. Dkt. Nos. 21, 25, 26, 32 & 37] and Debtor's Statement of Financial Affair [Bankr. Dkt. No. 17].

11.      Secured Creditor has been making protective advances for taxes.  See Exhibit A.

12.      These facts all support "cause" for dismissal of the case, or in the alternative, clearly meet the lesser standard for lifting the automatic stay.

13.    Before proceeding any further, Secured Creditor wants to be clear that it does not agree with Debtor's valuation of the Property which understated value is being advanced solely in the mistaken hope that Secured Creditor will be bullied into submission out of fear of a cramdown.

14.    It is clear that Debtor has no reasonable prospect of reorganizing and that this case was filed in "bad faith."   Interestingly, Debtor is in a "catch-22" with respect to value.  If Secured Creditors is under-secured as Debtor contends, there is no reasonable prospect for reorganization. On the other hand, even if Secured Creditor is fully secured, there is no reasonable prospect for reorganization, given that Debtor's schedules and its budget demonstrate that it cannot pay the required interest or amortization on the Borrower's mortgage.

15.    Realizing the above, Debtor filed a baseless adversary proceeding to reduce Secured Creditor's foreclosure judgment even though the Bankruptcy Court has no subject matter jurisdiction over a foreclosure judgment.  *Buckskin Realty Inc., v. Windmont Homeowners Assoc., Inc. (In re Buckskin Realty Inc.)*, 2016 WL 5360750, at *5 (Bankr. E.D.N.Y. 2016) (holding that the Second Circuit law is clear that the state court is the appropriate forum for any challenge to a foreclosure judgment, even one asserting that the judgment is void); *Citibank, N.A. v. Swiatkoski*, 395 F. Supp. 2d 5, 10 (E.D.N.Y. 2005) (holding that where a party seeks relief in federal court from a state court judgment of foreclosure and sale, "it is 'unmistakably clear' that the [federal] Court lacks jurisdiction…").

16.    Accordingly, the Court should end this case now, or at least lift the automatic stay.  As an alternative, if the Court permits the case to proceed, it should either convert the case to Chapter 7 or direct adequate protection payments.

## FACTUAL BACKGROUND

**A.      Non-Debtor Borrower's First Mortgage with Secured Creditor**

17.      On June 27, 2005, non-debtor Borrower executed and delivered a Promissory Note and a Mortgage securing payment of the Note in the amount of $390,450.00 in favor of Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for lender, PHH Mortgage Corporation and its successors and assigns, as mortgagee, pursuant to which Borrower mortgaged the Real Property (the "First Mortgage").   See Secured Creditor' s Proof of Claim annexed here to as **Exhibit A.**

18.      On December 5, 2006, non-debtor Borrower executed and delivered a Promissory Note and a Mortgage securing payment of the Note in the amount of $13,550.00  00 in favor of  MERS, as nominee for lender, PHH Mortgage Corporation and its successors and assigns, as mortgagee, pursuant to which Borrower mortgaged the Real Property (the "Second Mortgage").   See Exhibit A.

19.      On December 6, 2006, Borrower duly executed and delivered a note whereby Borrower promised to pay the sum of $404,000.00 plus interest as set forth on the note (the "Consolidated Note").   See Exhibit A.

20.      On December 6, 2006, to secure the payment of the sum represented by the Consolidated Note, Borrower duly executed and delivered a Consolidation, Extension, Modification Agreement (the "CEMA") in favor of MERS, as nominee for lender, PHH Mortgage Corporation and its successors and assigns, as mortgagee, pursuant to which Borrower mortgaged the Property.    The CEMA consolidated the First Mortgage and Second Mortgage.    See Exhibit A.  The First Mortgage, Second Mortgage and CEMA were later assigned to Secured Creditor. See Exhibit A.

21.     On or about February 21, 2012, Borrower executed a Loan Modification Agreement with Secured Creditor which amended and supplemented the CEMA and Consolidated Note. Exhibit A.

22.     On or about September 13, 2012, Secured Creditor commenced foreclosure proceedings against Borrower with respect to the Property.  See *HSBC Bank USA, National Association as Trustee for PHH 2007-1 v. Glenn Bernandez et. a.l,* Index No. 130705 (the "Senior Lienholder's Foreclosure Action").

23.     The Senior Lienholder's Foreclosure Action included Gustavia Home, LLC's predecessor as a party defendant.  See Judgment of Foreclosure, entered on June 4, 2018 annexed hereto as **Exhibit B.**

24.     On June 4, 2018, Secured Creditor obtained a Judgment of Foreclosure with respect to the Property (the "Secured Creditor's Foreclosure Judgment").  See Exhibit B.   Secured Creditor scheduled a foreclosure sale of the Property for March 7, 2019 but Debtor filed for Chapter 11 on March 6, 2019.   See Notice of Sale annexed hereto as **Exhibit J.**

**B.     Debtor's Acquisition  of Property at Junior Lienholders' Foreclosure**

25.     On or about June 1, 2007, Borrower obtained a loan in the amount of $65,000 from Aegis Wholesale Corporation secured by a mortgage *junior* to that of Secured Creditor (the "Junior Mortgage").   The Junior Mortgage was later assigned to Gustavia Home Loans (the "Junior Mortgagee").

26.     On or about April 27, 2016, Junior Mortgagee initiated a foreclosure action against Borrower on the Junior Mortgage with respect to the Property in the U.S. District Court, Eastern District of New York.  See *Gustavia Home, LLC, v. Glenn Bernandez, et al.*, Civil Action No. 16-2224 (MKB)(RLM) (the "Dist. Crt. Proc.")

27.    The Junior Mortgagee served Borrower with the Summons and Complaint in person and by mail at Borrower's "place of residence" listed as "4 Rumson Road, Staten Island, New York 10314".  See Affidavits of Service annexed hereto as **Exhibit C.**   During its foreclosure action, Junior Mortgagee did not serve Borrower at the Property although Debtor is alleging that Borrower is currently residing in the basement of the Property.  *Id.*

28.    There were no tenants residing at the Property during Junior Mortgagee's foreclosure action and thus none were served with Junior Mortgagee's Summons and Complaint and no tenant was deemed a necessary party defendant to the action.  See Junior Mortgagee's Declaration of Regularity in Support of Judgment of Foreclosure and Sale and Caption Amendment at ¶¶ 9 & 10 [Dist. Crt. Proc., Dkt No. 25] annexed hereto as **Exhibit D** (without attachments) and Chief Judge Magistrate's Report and Recommendation, So-Ordered July 19, 2017 at pg 8 [Dist. Crt. Proc., Dkt. No. 34] annexed hereto as **Exhibit E**.

29.    On or about September 6, 2017, a foreclosure judgment was entered in favor of Junior Mortgagee in the amount of $ 126,183.86.  [Dist. Crt. Proc. Dkt No. 38] annexed hereto as **Exhibit F.**

30.    The Property was scheduled for a foreclosure sale on December 7, 2017 with the sale being subject to all liens. See Referee's Report of Sale [Dist. Crt. Pro. Dkt No. 43] annexed hereto as **Exhibit G.**

31.    At the December 7, 2017 foreclosure sale of the Property, the Junior Mortgagee bid its judgment amount of $126,183.86 and was the highest bidder.   See Referee's Report of Sale [Dist. Crt. Pro. Dkt No. 43] annexed hereto as Exhibit G.

32.    According to the website of the Delaware Department of State, Division of Corporations, Debtor was incorporated in the State of Delaware on December 27, 2017.  See Entity Detail annexed hereto as **Exhibit H.**

33.     On or about January 22, 2018, a Referee's Deed in Foreclosure was issued to Debtor rather than Junior Mortgagee.  See Referee's Deed in Foreclosure, dated January 22, 2018 and recorded April 12, 2018, Land Doc No. 695266 annexed hereto as **Exhibit I.**

34.     An assignment of the foreclosure bid from Junior Mortgagee to Debtor is not on the District Court's docket even though the Referee's Deed transfers the Property to Debtor and not the Junior Mortgagee.  See Exhibit I.

**C.     Bankruptcy Filing**

35.     On March 6, 2019, Debtor filed a voluntary petition pursuant to chapter 11 of the Bankruptcy Code without any supporting schedules.

36.     On March 11, 2019, Debtor filed its List of Creditors Who Have the 20 Largest Unsecured Claims.  [Bankr. Dkt. No. 10].  Secured Creditor is the only creditor listed by Debtor. *Id.*

37.     On March 21, 2019 Debtor filed its schedules of assets and liabilities. [Bankr. Dkt. No. 17]

38.     The Property is an investment property of Debtor.

39.     Secured Creditor is the only creditor listed on the schedules.  [Bankr. Dkt. No. 17]

40.     Secured Creditor's claim is listed on Schedule D of the Petition in the amount of $642,035.22 (the amount of the Secured Creditor's Foreclosure Judgment) and it is not marked contingent, unliquidated or disputed.  [Bankr. Dkt. No. 17]

41.     According to Debtor's Operating Statements, Debtor is not collecting rent.  To date, all of Debtor's Monthly Operating Reports set forth that "Copies of IRS Form 6123 and Tax returns are not included because Debtor has no income to report".   See Monthly Operating Reports, [Bankr. Dkt. Nos. 21, 25, 26, 32 & 37] and Debtor's Statement of Financial Affair [Bankr. Dkt. No. 17].

42.     Debtor's Petition does not list any unsecured general or priority claims.

43.    Since January 22, 2018, Debtor has not advanced any funds for taxes.  Secured Creditor has been advancing property taxes with respect to the Property.  See the Off-Scheduled Escrow Statement, dated April 5, 2019, attached to Exhibit A.

### 1.    Debtor's Motion to Value Property

44.    On May 13, 2019, Debtor filed its Motion Setting Property Value and Seeking Mediation (the "Motion to Value").  [Bankr. Dkt. No. 19]

45.    Debtor's  Motion to Value  seeks to value the Property at $230,000 based on a "Drive-by BPO" rather than a full interior and exterior appraisal.

46.    On May 15, 2019, Secured Creditor filed its Proof of Claim in the amount of $707,656.05. See Exhibit A.

47.    On June 13, 2019, Secured Creditor filed its Preliminary Response to the Motion to Value (the "Preliminary Response") [Bankr. Dkt. No. 29].  The Preliminary Response attached Secured Creditor's Broker's Price Opinion setting forth a value of $460,000.00.  The Preliminary Response also requested that it be allowed to obtain a full appraisal of the Property that would include an interior inspection.

48.    On June 18, 2019, Debtor filed its Reply to the Secured Creditor's Opposition (the "Reply") [Bankr. Dkt. No. 29].  The Reply stated that a full appraisal is "neither necessary nor feasible at this time because the Property is inhabited by squatters…"  See Reply at ¶ ¶ 5 & 11 [Bankr. Dkt. No. 29].

49.    At the June 20, 2019 hearing on the Motion to Value, given lack of a full appraisal and access to the interior of the Property, the Court directed the parties to engage in a "mandatory telephonic settlement conference "  and a "mandatory in-person meeting settlement conference"

among Debtor, Secured Creditor's representative and their respective attorneys of the aforementioned parties.

50.     The parties engaged in mandatory settlement conferences on July 12, 2019 and August 8, 2019.  However, a settlement was not possible.

51.     By email, dated July 18, 2019, Debtor's counsel stated that in addition to the squatter living in one of the two units, Borrower is residing in the basement of the Property.

52.     The existence of the purported squatters indicate that Debtor failed to secure the Property after the December 7, 2017 foreclosure sale or after Debtor received the Referee's Deed in Foreclosure and has failed to take the necessary steps to promptly evict the squatters and/or Borrower from the two-unit investment Property.

53.     Secured Creditor is unable to conduct interior appraisal of the Property since Debtor alleges that it cannot access the interior of the Property due to squatters.

### 2.     Debtor's Adversary Proceeding to Invalidate Secured Creditor's Proof of Claim

54.     Eight days following the June 20, 2019 hearing, wherein the Court directed the parties to engage in "mandatory settlement conferences", Debtor filed a baseless adversary proceeding seeking, among other things, to "invalidate" Secured Creditor's Proof of Claim by alleging that the lost note affidavit which preceded the CEMA did not contain sufficient language.

55.     Debtor's adversary proceeding was filed despite the fact that Debtor is fully aware of Secured Creditor's Foreclosure Judgment the exact amount of which is listed on Debtor's schedules (i.e $642,035.22).  See *Citibank, N.A. v. Swiatkoski*, 395 F. Supp. 2d 5, 10 (E.D.N.Y. 2005) (holding that where a party seeks relief in federal court from a state court judgment of foreclosure and sale, "it is 'unmistakably clear' that the [federal] Court lacks jurisdiction…")

56.    On August 8, 2019, Secured Creditor filed an Answer and Counterclaim.    Secured Creditor's Counterclaim seeks damages for Debtor's failure to secure the Property and thus allowing squatters to enter the Property.

## ARGUMENT

57.    This case should be dismissed because there is no likelihood of reorganization.    Debtor has no other significant creditors and no substantial need for reorganization.    Debtor has not taken control over the Property since it acquired the Property on January 22, 2018 resulting in squatters at the Property and lack of income from the Property.    Debtor has failed to set aside funds and/or pay property tax obligations when and as they came due.    There is no pending eviction proceeding to remove the squatters.

58.    Secured Creditor has obtained a foreclosure judgment with respect to the Property which is the Debtor's only asset.

59.    Secured Creditor has filed a timely proof of claim in the amount of $707,656.05 and will amended same shortly to reflect the amount of the Secured Creditor's Foreclosure Judgment.

60.    In its Schedules, Debtor lists the value of the Property as $230,000 and has filed a Motion to Value to reduce Secured Creditor's claim based upon a "drive-by BPO" of the Property.    Debtor is also claiming that Secured Creditor cannot perform an interior appraisal of the Property because there is a squatter on the Property.    This is disturbing as a Motion to Value cannot be adjudicated without a full appraisal of both the interior and exterior of the premises.    Also, the fact that there is a squatter at the Property and the Borrower is in the basement of the Property indicates that Debtor failed to secure the Premises after the Property was transferred to it by the Junior Mortgagee.    Debtor should not be entitled to benefit (via reduced evidentiary burden) as a result of his own failure to secure the property.

61.     In light of the above, the Debtor 's single asset case cannot lead to a reasonable prospect of a successful reorganization absent the consent of the Secured Creditor which consent is not present here. There is no need for additional administration by this Court or misuse of judicial resources.

**A.  Dismissal as "Bad "Faith" Filing**

62.     Section 1112(b)(1) of the Bankruptcy Code states, in pertinent part:

> the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate. 11 U.S.C. §1112(b)(1).

63.     Section 1112(b)(4) contains sixteen examples of events that constitute cause for dismissal. *In re FRGR Managing Member, LLC*, 419 B.R. 576, 580 (Bankr. S.D.N.Y. 2009).   These grounds are "illustrative, not exhaustive."   *In re Babayoff*, 445 B.R. 64, 76 (Bankr. E.D.N.Y. 2011) citing *C–TC 9th Ave. P'ship v. Norton Co. (In re C–TC 9th Ave. P'ship*), 113 F.3d 1304, 1311 (2d Cir.1997).

64.     Accordingly, courts have also determined that conversion or dismissal of a Chapter 11 case is warranted for other reasons, including the debtor's inability to effectuate a plan and a debtor's unwarranted delay of the case through unnecessary motion practice.  *In re Babayoff* at 76.  Also see  *In re DCNC North Carolina I, LLC*, 407 B.R. 651, 665 (Bankr.E.D.Pa.2009) (concluding that "the inability to effectuate a plan, by itself, provides cause for dismissal or conversion of a chapter 11 case");  *In re Tornheim*, 181 B.R. 161, 171 (Bankr.S.D.N.Y.1995) (finding that the debtor's motion practice was a "tactic to circumvent rather than serve the goals of the bankruptcy laws" and a factor in finding cause to dismiss the case).

65.    A party need not demonstrate that all the elements of "cause" can be met. See *In re TCR of Denver, LLC*, 338 B.R. 494, 500 (Bankr. D. Colo. 2006).

66.    In assessing a motion made under Section 1112(b), the movant bears the burden of establishing " 'cause by a preponderance of the evidence....' " *In re Babayoff* at 76. The bankruptcy court has wide discretion to determine if cause exists and how to ultimately adjudicate the case. *Id.*, *In re C-TC 9th Ave. P'ship*, at 1311 (bankruptcy court may dismiss a chapter 11 case based upon a finding that the petition was filed in "bad faith" even without considering factors under section 1112(b)).

67.    In the seminal Second Circuit case analyzing the bad faith issue, the court found bad faith where the Chapter 11 filing "was made at the moment that the state litigation had taken a turn adverse to [debtor], making mortgage foreclosure eminent." *In re C-TC 9th Ave. P'Ship* at 1310.

68.    The following are the Second Circuit's enumerated factors used in its analysis in favor of dismissal of the case. Secured Creditor has included a parenthetical following each factor listed below with the facts in this case that apply to that factor:

(1) the debtor has only one asset (Debtor's schedules list only one asset);

(2) the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors (Debtor has no unsecured creditors; NYC Water Board has filed a secured proof of claim in the amount of $3,195.48, dated July 19, 2019);

(3) the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt (Secured Creditor has a foreclosure judgment against Debtor's only asset);

(4) the debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action (Debtor filed chapter 11 to reduce secured creditor's lien and to attack Secured Creditor's Foreclosure Judgment as evidenced by the Motion to Value and Debtor's adversary proceeding);

(5) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights (provide status of the Secured Creditor's Foreclosure Action);

(6) the debtor has little or no cash flow (Debtor has no income as evidenced by the Debtor's Operating Reports and Debtor's Statement of Financial Affairs);

(7) the debtor can't meet current expenses including the payment of personal property and real estate taxes (Debtor has no income and is not paying real property taxes); and

(8) the debtor has no employees (Debtor's schedules do not reflect employees).

69.    All of the *C-TC 9th Ave.* factors are present here and thus this case should be dismissed.

70.    As acknowledged in Debtor's schedules, Secured Creditor is the only secured creditor, and the amount of Secured Creditor's Foreclosure Judgment against the Debtor substantially exceeds the value attributed by Debtor to its single asset, such that Secured Creditor would control the non-existent unsecured creditor class, if the Debtor's present value of the Property is believed.  There is "no reasonable likelihood that the debtor intend[s] to reorganize and no reasonable probability that it [will] eventually emerge from bankruptcy proceedings.  *Id.* at 1309.

**B)  Dismissal Due to Continuing Losses to the Estate and No Likelihood of Rehabilitation**

**a.    Continuing Losses to the Estate**

71.    "A party seeking to demonstrate cause under §1112(b)(4)(A) must establish both the 'substantial or continuing loss' prong as well as the 'absence of a reasonable likelihood of rehabilitation.'" *In re FRGR Managing Member LLC*, 419 B.R. 576, 581 (Bankr. S.D.N.Y 2009). An estate's liability for administrative expenses constitutes a diminution in assets.  *In re Lyons Transportation Lines, Inc.,* 123 B.R. 526, 531 (Bankr.W.D.Pa. 1991). "To determine whether there is a continuing loss or a diminution of the estate, a court must make a full evaluation of the present condition of the estate, not merely look at a debtor's financial statements."  In re AdBrite Corp., 290 B.R. 209, 215 (Bankr.S.D.N.Y. 2003).  There need not be significant diminution to satisfy the

first prong of section 1112(b)(4)(A).  See *In re East Coast Airways, Ltd.*, 146 B.R. 325, 336 (Bankr.E.D.N.Y. 1992); *In re Kanterman*, 88 B.R. 26, 29 (S.D.N.Y. 1988).

72.    There are continuing losses to the estate in this case.  The Debtor has no income to pay the real estate taxes or to cure the arrears on the mortgage held by the Borrower.  See Monthly Operating Reports, [Bankr. Dkt. Nos. 21, 25, 26, 32 & 37] and Debtor's Statement of Financial Affair [Bankr. Dkt. No. 17].  Debtor does not have control over the Property as demonstrated by the existence of squatters on the Property.

73.    Moreover, as this case remains in chapter 11, administrative costs continue to accrue, which contributes to the continuing loss to the estate and to the detriment of creditors. See *In re Lyons Transportation Lines, Inc.*, 123 B.R. 526, 531 (Bankr.W.D.Pa. 1991) (an estate's liability for administrative expenses constitutes a diminution of assets); *In re FRGR Managing Member LLC*, 419 B.R. at 581.

### b.    No Likelihood of Rehabilitation

74.    "Rehabilitation means to put back in good condition and reestablish on a sound basis." AdBrite, 290 B.R. at 216; see also In re Rundlett, 136 B.R. 376, 380 (Bankr.S.D.N.Y. 1992) ("Rehabilitation signifies that the debtor will be reestablished on a sound financial basis, which implies establishing a cash flow from which current obligations can be met").

75.    In individual chapter 11 cases, "a reasonable likelihood of rehabilitation" exists where the debtor can prevent the liquidation of his or her personal possessions.  In re Silverstein, 94 B.R. 284 (Bankr. E.D.N.Y. 1988).

76.    Here, there is no likelihood of rehabilitation because, based on the current posture of the case, it is unlikely that the Debtor will have an impaired consenting class and is unlikely to confirm a plan of reorganization pursuant to section 1129(a)(10).

77.    In addition, Debtor has insufficient funds or income available to fund a plan of reorganization.  The August 2018 Monthly Operating Report shows that the Debtor has only $2,068.58 in the Debtor-in-Possession Account.  (ECF Doc. No. 29).  Accordingly, there is no likelihood of rehabilitation. 11 U.S.C. §1112(b)(4)(A).

78.    Under 11 U.S.C. §1112(b), the Court, in its discretion, must determine whether dismissal or conversion is in "the best interest of creditors and the estate." 11 U.S.C. §1112(b)(1).  See also In re Gonic Realty Trust, 909 F.2d 624, 626-27 (1st Cir. 1990) (court has broad discretion to convert or dismiss a chapter 11 case).  There are no unsecured creditors in this case that need protection or assets which can be liquidated.  Movant has been delayed long enough in the exercise of its contractual and state law remedies by the unnecessary filing of this bankruptcy proceeding.  Therefore, the Court should dismiss this case.

**C.    Dismissal Due to Gross Mismanagement of the Estate - §1112(b)(4)(B)**

79.    Debtor has been the owner of the Property (the only estate asset) since January 22, 2018.

80.    Debtor has grossly mismanaged the Property because, as admitted by Debtor,  Debtor does not have access to the interior of the Property.  Debtor has not taken control over the Property since it acquired the Property on January 22, 2018.  Debtor has not taken sufficient steps to remove the alleged squatters since it took ownership of the Property in January 22, 2018.

81.    Debtor has had no income due to the presence of alleged squatters on the Property.

82.    Debtor is not paying property taxes or assessments on the Property, leaving the burden for such expense to Secured Creditor.

83.    Accordingly, due to neglect and gross mismanagement of the only estate asset (i.e. the Property), the case should be dismissed.

**D.      Lifting of the Automatic Stay  -  § 362(d)(1)**

84.      Section 362(d) of the Bankruptcy Code permits a party to seek relief from the automatic stay for various reasons, including moving under sub-section (d)(1) for "cause", or moving under sub-section (d)(2) based on a two-part test, in which the Court remain if the Debtor has equity in the property, and if not, then it can lift the stay if such asset is not necessary for a reorganization (which can include no reorganization is possible).  See 11 U.S.C. §§ 362(d)(1) and (2).

85.      Regarding "cause" under § 362(d)(1), courts have held that the same "bad faith" standard applicable in the dismissal context can also support lifting of the automatic stay.   See e.g., *In re Syndicom Corp.*, 268 BR. 26, 48-49 (Bankr. S.D.N.Y. 2001); *In re Balco Equities, Ltd., Inc.*, 312 B.R. 734, 748-49 (Bankr. S.D.N.Y. 2004).  Moreover, the court in <u>*Balco Equities*</u> went further to explain that a court may lift the automatic stay if a debtor has simply not dealt "fairly" with creditors, even if grounds for "bad faith" dismissal of the case do not exist.  *Id*. at 748-49, and that the stay may be lifted if the Debtor is simply exhibiting an "excess of optimism" regarding prospects for reorganization, even if not actual bad faith.  *Id*. at 754

86.      Secured Creditor's security interest in the Property is being significantly jeopardized by Debtor's failure to pay real estate taxes  while Movant is prohibited from pursuing lawful remedies to protect its interest in the Property.  Secured Creditor has no protection against the erosion of its collateral position and no other form of adequate protection is provided.

87.      If Secured Creditor is not permitted to enforce its security interest in the collateral or be provided with adequate protection, it will suffer irreparable injury, loss, and damage.

88.      Secured Creditor respectfully requests the Court grant it relief from the automatic stay pursuant to §362(d)(1) of the Bankruptcy Code, for cause, namely the lack of adequate protection to Movant for its interest in the above stated collateral.

89.      As explained above, the above standards are satisfied.

**E.      Lifting of the Automatic Stay  -  § 362(d)(2)**

90.      With respect to § 362(d)(2), Secured Creditor has similarly established entitlement to relief. On the first prong, Debtor's schedules admit that Debtor has not equity in the Property.    On the second prong (i.e. absence of prospect for reorganization), Secured Creditor has addressed this issue at length herein, but will simply add that "a lift stay hearing should not be transformed into a confirmation hearing," "the 'effective reorganization' requirement enunciated by the Supreme Court….requires a showing by a debtor…that a proposed contemplated plan is not patently unconfirmable and has a realistic chance of being confirmed." *In re 266 Washington Assocs.*, 141 B.R. 275, 281 (Bankr. E.D.N.Y. 1992), *aff"d*, 1992 U.S. Dist. LEXIS 18977 (E.D.N.Y. Dec. 10, 1992).

**F.      In the Second Alternative, Conversion to Chapter 7**

91.      In the Second Alternative, Secured Creditor requests that the Court covert the case to chapter 7 pursuant to 11 U.S.C. § 1112(b).  The facts and law discussed above amply support a conversion to chapter 7, but, in addition to the reasons discussed below, Secured Creditor is concerned that this action will simply delay the inevitable along with creating administrative expenses likely to be paid to the detriment of the Secured Creditor's collateral base.

92.      Dismissal is more appropriate than conversion under application of applicable multi-factor test since the best interest of creditors and the estate favor dismissal of the case.

93.      Assuming this Court determines that "cause" exists under §1112 to either dismiss or convert the case, Secured Creditor submits that when applying the "multi-factor" test previously

used by this Court to decide between the two, this Court should find that dismissal is the more appropriate option –in particular:  (1) only one creditor; (2) only one asset; (3) asset encumbered by sole creditor's secured debt; and (4) this dispute would best be resolved in a state court foreclosure action.  See, e.g. *In re Jude Thaddeus Partners I, Inc*., Case No. 10-73014 (AST) 2010 Bankr. LEXIS 3931 (Bankr. E.D.N.Y. November 1, 2010) (applying Collier on Bankruptcy ¶112.04[7]; at 1112-39-1112-40 to dismiss a case involving single encumbered asset); see generally *In re Rubio*, Case No. 09-75163 (AST), 2011 Bankr. LEXIS 148 (Bankr. E.D.N.Y. Jan. 13, 2011) (dismissing case).

94.     At best, a conversion to a case undr4 chapter 7 would create a limited opportunity for a sale of the Debtor's sole asset, the Property, but, the only creditor to benefit from such a sale would be Secured Creditor, which already has rights to liquidate the Property to pay its claim and the secured claim of the NYC Water Board (Claim Register No. 2).  Said otherwise, the estate would not benefit from a conversion since there are no unsecured creditors.

95.     This case is a two-party dispute and the state which has jurisdiction over the foreclosure action is well qualified to settle any disputes regarding Secured Creditor's Foreclosure Judgment.

**G.     In the Third Alternative, Adequate Protection Should be Provided**

96.     Under Section 361 of the Bankruptcy Code, Secured Creditor is entitled to protection from the depreciation, deterioration or diminution in the value of its collateral during the bankruptcy case.

97.     When a secured creditor is threatened with a decline in the value of its interest, the estate must make up for the decline in value either through cash payments, liens on other property or other methods that provide the indubitable equivalent of the creditor's interest. See *U.S. Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365 (1988) (secured creditor would

be entitled to periodic payments or additional collateral to provide adequate protection if property is depreciating); *Travelers Life Ins. & Annuity Co. v. Ritz-Carlton of D.C., Inc. (In re Ritz-Carlton of D.C., Inc.)*, 98 B.R. 170, 173 (S.D.N.Y. 1989).

98.     Adequate protection maintains the status quo between the petition date and the date a plan is confirmed or the underlying claim is otherwise satisfied.  See *In re 354 East 66th Street Realty Corp.*, 177 B.R. 776, 781 (Bankr. E.D.N.Y. 1995).  By preserving the status quo, adequate protection ensures that the secured creditor's rights and interests are not being prejudiced during the pendency of the bankruptcy case. *In re Pac. Lifestyle Homes, Inc.*, 2009 WL 688908, at 8 (adequate protection "insures that the secured creditor receives the value for which he bargained").

99.     Accordingly, Secured Creditor requests adequate protection through all of the following means: (a) Debtor must make up for the decline in value through cash payments to the Secured Creditor; (b) Debtor must reimburse Secured Creditor for the real property taxes Secured Creditor has paid since January 22, 2018; the date the Debtor became owner of the Property; (c) Debtor to turn over to Secured Creditor any and all rents currently being paid to Debtor pending the sale of the Property or confirmation of any proposed plan or other resolution of this case (see Borrower's Assignment of Rents, dated December 6, 2006 and annexed to Exhibit A); and (d) any rents presently contained in Debtor's bank accounts be turned over to Secured Creditor or sequestered in a separate account for Movant's future benefit.

## WAIVER OF MEMORANDUM OF LAW

100.     The authorities relied upon are set forth herein.  Accordingly, no separate memorandum of law is required pursuant to Rule 9013-1(a) of the Local Bankruptcy Rules of the Eastern District of New York.

**WHEREFORE**, Secured Creditor, prays this Court issue an order Granting Creditor in (a) dismissal of the case pursuant to 11 U.S.C. §1112 or (b) relief from the automatic stay pursuant to 11 U.S.C. §362 to allow Secured Creditor to proceed with its foreclosure sale of the Property.  In the second alternative, Secured Creditor requests that the case be converted to chapter 7, or as a third alternative, for Debtor to provide adequate protection and for any such further relief as this Honorable Court deems just and appropriate.

Dated:  August 23, 2019
        Westbury, NY

RAS BORISKIN, LLC
900 Merchants Concourse
Westbury, Y 11590

By: /s/ Cleo Sharaf-Green
Cleo Sharaf-Green, Esq.
Tel: (516) 280-7675 ext. 1194
Fax: (516) 280-7674
Email: csharaf@rasboriskin.com

CERTIFICATION OF SERVICE

**I HEREBY CERTIFY** that on August 23, 2019, I caused the foregoing  PHH MORTGAGE'S

MOTION FOR (I) EITHER  (A) DISMISSAL OF THE CASE PURSUANT TO 11 U.S.C.

§1112 OR (B) RELIEF FROM THE AUTOMATIC STAY PURUSUANT TO 11 U.S.C.

§362(d) OR (II) IN THE SECOND ALTERNTIVE, CONVERSION TO CHAPTER 7 UNDER

11 U.S.C. §1112  OR (III) IN THE THIRD ALTERNATIVE, ADEQUATE PROTECTION o be

electronically filed with the Clerk of Court by using the CM/ECF system, and a true and correct

copy has been served via CM/ECF or United States Mail to the following parties:

Att:  Seth D. Weinberg, Esq.
Hasbani & Light, P.C.
450 Seventh Avenue, Ste 1408
New York, NY 10123

Mitchell Lane NY LLC (DE)
1688 Meridian Avenue, Suite 610
Miami Beach, FL 33139

Office of the United States Trustee
Eastern District of NY (Brooklyn Office)
U.S. Federal Office Building
201 Varick Street, Suite 1006
New York, NY 10014

NYC Water Board
Andrew Rettig
Assistant Counsel
59-17 Junction Blvd, 13th Floor
Elmhurst, NY 11373-5108

Dated: August 23, 2019
      Westbury, NY

                          RAS BORISKIN, LLC
                          900 Merchants Concourse
                          Westbury, Y 11590

                          By: /s/ Cleo Sharaf-Green
                          Cleo Sharaf-Green, Esq.
                          Tel: (516) 280-7675 ext. 1194
                          Fax: (516) 280-7674
                          Email: csharaf@rasboriskin.com